UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Lionel Quinteros, | Case No.: 16-cv-583-JLS (JLB) |
| Petitioner, | **REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| Daniel Paramo, Warden, | |
| Respondent. | |

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I.    INTRODUCTION

Petitioner Lionel Quinteros ("Petitioner") is a state prisoner who is proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  (ECF No. 1 at 1, hereinafter "Pet.")

Petitioner challenges his December 21, 2012 San Diego County Superior Court conviction where a jury found him guilty of assault with a deadly weapon by a prisoner. (ECF No. 13-1 at 8.)  Petitioner was sentenced to prison for a term of eight years.  (*Id.* at 2.)

Petitioner appealed the superior court's judgment to the California Court of Appeal. (ECF No. 13-1 at 8.)  The California Court of Appeal affirmed the judgment of the superior

1

court.  (ECF No. 13-1 at 8.)  Petitioner filed a petition for review to the California Supreme Court.  (ECF No. 13-1 at 8.)  The California Supreme Court denied the petition.  (ECF No. 13-1 at 9.)  Petitioner did not file a petition for certiorari in the United Sates Supreme Court.  (Pet. at 1.)

On August 12, 2015, Petitioner filed the instant Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254.  (*See* Pet. at ECF No. 13-1 at 9.)  For the following reasons, the Court finds that the state court adjudication of the claims raised in the Petition is not contrary to, nor does it involve an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  Accordingly, the Court **RECOMMENDS** the Petition be **DENIED**.

## II.   UNDERLYING FACTS

This Court gives deference to state court findings of fact and presumes them to be correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding that findings of historical fact, which include inferences properly drawn from such facts, are entitled to statutory presumption of correctness).  The relevant facts drawn from the state court record follow.

Petitioner was incarcerated at the Richard J. Donovan Correctional Facility.  Petitioner and a group of prison inmates attacked a fellow inmate, Victoriano Ortiz, in the prison yard of the Richard J. Donovan Correctional Facility while he was walking laps with another inmate, Geronimo Polina.  (ECF No. 13-1 at 7; ECF No. 14-1 at 7-8.)  Ortiz was punched, kicked, and slashed with a razor blade by the group of prison inmates, which included Polina, Alberto Macias, and Petitioner.  As a result of this attack, Petitioner and two co-defendants (Polina and Macias) were charged with and jointly tried for conspiracy to commit murder, attempted murder, and assault with a deadly weapon by a prisoner.  (ECF No. 13-1 at 7.)  Each of Petitioner's crimes was alleged to have been committed for the benefit of, at the direction of, or in association with a criminal street gang.  (ECF No. 13-1 at 7-8.)  Petitioner had four prior strike convictions within the meaning of California Penal Code §§ 667(b)-(i), 1170.12, and 668.  (ECF No. 13-1 at 8.)

The record reflects that the three co-defendants, including Petitioner, sat through a joint trial wearing leg chains that were strung to an I-bolt on the floor, all of which was concealed from the jury by a table skirt. (ECF No. 14-1 at 27.) During the morning of December 13, 2012, after defendants rested their cases, the prosecution called its first rebuttal witness, Officer Bravo. (ECF No. 14-1 at 10; ECF No. 14-9 at 26-27.) Soon after this rebuttal witness was called to the stand, one of Petitioner's co-defendants, Macias, slash attacked his attorney with a razor blade while in the presence of the jury. (*Id.*; ECF No. 13-1 at 12; ECF No. 14-1 at 26; ECF No. 14-3 at 225.) Within minutes of this attack, and still in the presence of the jury, security personnel unchained all three co-defendants from the ground to remove them from the courtroom. (ECF No. 14-10 at 6-7.) There is no evidence as to whether any juror actually saw any defendant's leg restraints.

In the hours that followed the attack on December 13, 2012, superior court proceedings were held outside the presence of the jury. During these proceedings, Petitioner's counsel moved for a mistrial. (ECF No. 13-1 at 13; ECF No. 14-3 at 226; ECF No. 14-9 at 38.) Following these proceedings, and outside the presence of the defendants, the jury returned to the courtroom so that the court could excuse the jury for the day. (ECF No. 14-3 at 226.) Before excusing the jury on December 13, 2012, the court admonished the jury that they "not let what happened in the courtroom affect what you think the evidence does or does not show about what happened at Donovan." (ECF No. 14-9 at 39-42.)

The next day, on December 14, 2012, the superior court conducted in camera interviews of the jurors and the alternate jurors to determine the effect of the courtroom attack on the jury. (ECF No. 13-1 at 15; ECF No. 14-18 at 4-31.) Upon questioning, Juror Number Two stated that he would "certainly try" to not let the incident with Macias affect his deliberations with regard to Petitioner, but the juror indicated that "there's got to be an effect" and noted that he observed "a young man that had a very bad temper." (ECF No. 13-1 at 16.) The trial court asked Juror Number Two if he could set aside what happened in court, to which the juror replied, "Yes, we could go through our notes and tally it up and

figure what's correct." (ECF No. 13-1 at 16.) The court did not excuse Juror Number Two, but did excuse two other sitting jurors who indicated that they did not believe they could be fair and impartial. (ECF No. 13-1 at 16.)

After the court completed the in camera interviews, Petitioner's counsel renewed his mistrial motion. Petitioner's counsel argued that the incident with Petitioner's co-defendant, Macias, painted Petitioner in a bad light, even though Petitioner was not involved in the incident. (ECF No. 13-1 at 16; ECF No. 14-9 at 62-68.) Petitioner's counsel also argued that the courtroom incident undermined Petitioner's trial defense of downplaying Ortiz's injuries. (*Id*.) Petitioner's counsel argued that, when Petitioner's co-defendant Macias committed a violent act in front of the jury, it reinforced any bias that the defendants were violent men. (ECF No. 14-14 at 30.) Petitioner's counsel further alleged that the jurors could not put the courtroom incident aside even if they said they could. (ECF No. 13-1 at 16; ECF No. 14-9 at 67-68.)

The trial judge denied Petitioner's motion for a mistrial. (ECF No. 13-1 at 13.) The court stated that it did not see how the incident with Macias undercut any argument that Petitioner's counsel intended to make as to the severity of Ortiz's injuries. (ECF No. 13-1 at 16.) The court also stated that Petitioner sat still during the attack and appeared to be unaware of what Macias was going to do. (ECF No. 13-1 at 16.) The court denied the motions for mistrial because the remaining jurors indicated that they could be fair and impartial and the court had to "take them at their word" and "trust them." (ECF No. 13-1 at 16.)

Also on December 14, 2012, a brief hearing was held where the defendants as well as all jurors were present together in the same courtroom for the first time after the attack. (ECF No. 14-3 at 227-28.) Defendants wore handcuffs during the hearing. (*Id*.) The Court issued a media admonishment and directed the jury to return on December 19th for instructions, closing arguments, and deliberations. (*Id*. at 228; ECF No. 14-9 at 61-62.)

Thereafter, on December 19, 2012, trial resumed for instructions, closing arguments, and deliberations.[1]  (ECF No. 14-3 at 231; ECF No. 14-10 at 4, 18-20.)  With the exception of Macias, defendants were not handcuffed, and their leg chains were concealed by a table skirt.  (ECF No. 14-10 at 16.)  Prior to deliberations, the jury was instructed that it must decide the case based only on the evidence presented in the courtroom.  (ECF No. 13-1 at 17.)  The court also gave the jury the following special limiting instruction:

> Your task is deciding what occurred on July 5th, 2010, at R.J. Donovan State Prison.  Once you agree upon the facts - - on what the facts are in this case, you are to apply the law set forth in these instructions to those facts.
>
> Ultimately, you will decide whether this case has been proven beyond a reasonable doubt.  If it has not been proven beyond a reasonable doubt, you must find the defendants, or any individual defendant against whom the case has not been proven, not guilty.
>
> In reaching your determination, you are not to consider anything that you observed  or heard in the courtroom on December 13th, 2012.  Those events should not enter into or affect your deliberations in any way.

(ECF No. 14-10 at 30-31; ECF No. 13-1 at 16-17 (italics omitted).)

Ultimately, the jury convicted Petitioner on the charge of assault with a deadly weapon by a prisoner, but acquitted Petitioner of the conspiracy to commit murder and the attempted murder charges.  (ECF No. 13-1 at 8; ECF No. 14-3 at 241-43.)  The jury also found the government had not proved the street-gang allegation as to any of the charges.  (*Id.*)  Petitioner admitted to the prior strike allegations.  (ECF No. 13-1 at 8.)  Petitioner was sentenced to prison for a term of eight years.  (ECF No. 13-1 at 2.)

Petitioner's counsel filed a motion for a new trial in the superior court, arguing that Petitioner's presumption of innocence and right to a fair trial were taken away by the

---

[1] Prior to instructions, the Court granted the prosecution's motion to withdraw Officer Bravo's rebuttal testimony, and the prosecution rested.  (ECF No. 14-10 at 20.)

16-cv-583-JLS (JLB)

courtroom attack involving Macias. (ECF No. 13-1 at 17.) The court denied the motion, finding that this was not the case, and relying in part on the fact that the jury only convicted Petitioner of assault on a prison inmate, and not of conspiracy to commit murder and attempted murder. (ECF No. 13-1 at 17.) Additionally, the court found that its decision was supported by the fact that the jury did not find the related gang allegations to be true. (ECF No. 13-1 at 17.)

Petitioner appealed the superior court's judgment and raised several claims, two of which were similar to those now raised in the Petition before this Court. (ECF No. 13-1 at 8.) The two similar claims were: (1) the jury was exposed to inherently prejudicial influences as a result of Macias's courtroom attack on his attorney; and (2) the jury seeing Petitioner in restraints and handcuffs was inherently prejudicial. (ECF No. 14-14 at 30, 35.) The California Court of Appeal affirmed the judgment of the superior court. (ECF No. 13-1 at 8.)

Petitioner next filed a petition for review to the California Supreme Court. Petitioner asserted three grounds for relief: (1) whether Petitioner's due process right to an impartial jury was violated when the jury saw him shackled; (2) whether the jury's viewing of Petitioner shackled was so prejudicial that it denied Petitioner his due process right to an impartial jury; and (3) whether Macias's attack on his attorney at trial was so inherently prejudicial that Petitioner was deprived of his due process right to an impartial jury. (ECF No. 13-1 at 8-9.) The California Supreme Court denied the petition. (ECF No. 13-1 at 9.)

Finally, Petitioner filed a federal petition for writ of habeas corpus in this district, the Petition before this Court. (ECF No. 13-1 at 9.) Petitioner's grounds for relief are (1) Petitioner's right to an impartial jury was violated when the superior court permitted the jury to serve as the ultimate trier-of-fact despite the fact that the jury witnessed Petitioner's co-defendant, Macias, attack his attorney, and (2) Petitioner's right to due process was violated when the superior court allowed the Petitioner to be visibly restrained in front of the jury. (Pet. at 12.) Respondent filed a response to the Petition. (ECF No. 13-1 at 9.) Petitioner did not file a traverse.

## III. STANDARD OF REVIEW

Title 28, United States Code, § 2254, subsection (a) provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in [*sic*] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Additionally, Petitioner's habeas claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified at 28 U.S.C. § 2254(d). *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997) (Federal courts reviewing any petition filed in federal court after the April 24, 1996 enactment of "AEDPA," will apply its provisions). Under AEDPA, a petitioner must overcome a high threshold to obtain relief:

> Federal habeas relief may not be granted for claims subject to [28 U.S.C.] § 2254(d) unless it is shown that the earlier state court's decision was contrary to federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it involved an unreasonable application of such law, § 2254(d)(1); or that it was based on an unreasonable determination of the facts in light of the record before the state court, § 2254(d)(2).

*Harrington v. Richter*, 562 U.S. 86, 100 (2011) (internal quotation and citation omitted).

"Clearly established Federal law," as understood in the context of § 2254(d)(1), consists of holdings of Supreme Court decisions. *Williams v. Taylor*, 529 U.S. 362, 365 (2000) (stating that the phrase "clearly established Federal law," as determined by the United States Supreme Court, refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision"). Habeas corpus relief cannot be granted under § 2254(d)(1) "so long as 'fair-minded jurists' could disagree" on whether the state court decision is inconsistent with clearly established federal law. *Harrington*, 562 U.S. at 101.

To satisfy § 2254(d)(2)'s "unreasonable determination of the facts" standard, a petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Where there is no reasoned decision from the state's highest court, the federal habeas court "looks through" to the underlying appellate decision in applying AEDPA. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–06 (1991); *see also Harrington*, 562 U.S. at 99–100 (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits of the claim and is entitled to deference unless "there is reason to think some other explanation for the state court's decision is more likely").

## IV. DISCUSSION

### A. Ground One

Petitioner's Ground One for habeas relief is that his Sixth and Fourteenth Amendment rights to an impartial jury were violated when "the California courts permitted a jury that had seen a co-defendant attack his attorney decide upon the issue of guilt." (Pet. at 12.) Specifically, Petitioner argues that the incident with his co-defendant, Macias, was inherently prejudicial such that it deprived Petitioner of the right to an impartial jury. Petitioner further argues that Juror Number Two's in camera interview responses indicated a substantial likelihood of bias. (*Id.*)

The Sixth and Fourteenth Amendments secure to criminal defendants the right to trial by an impartial jury. *Skilling v. United States*, 561 U.S. 358, 377–78 (2010). The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence presented at trial. *See Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965). Evidence not presented at trial is deemed "extrinsic." *See Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987). Jury exposure to extrinsic evidence deprives a defendant of his constitutional rights to confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment. *Lawson v. Borg*, 60 F.3d 608, 612 (9th Cir. 1995). Juror exposure to extraneous influences is considered juror misconduct, even when the

exposure is not the juror's fault. *Boode v. Johnson*, No. 13cv2438, 2015 WL 1967089, at *11 (N.D. Cal. May 1, 2015) (quotation marks omitted), *aff'd*, No. 15cv16057, 2016 WL 5682721 (9th Cir. Oct. 3, 2016). However, "not every incident of juror misconduct requires a new trial." *See United States v. Klee*, 494 F.2d 394, 396 (9th Cir. 1974).

The clearly established federal law, as determined by the Supreme Court of the United States, regarding juror misconduct based on extrinsic influences comes from three Supreme Court cases: *Mattox v. United States*, 146 U.S. 140 (1892), *Remmer v. United States*, 347 U.S. 227 (1954), and *Smith v. Phillips*, 455 U.S. 209, 217 (1982). In *Mattox*, the Supreme Court established a rebuttable presumption of prejudice when a juror is exposed to extrinsic influences. *Mattox*, 146 U.S. at 149-50. *Remmer* later elaborated on the presumption of prejudice:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer*, 347 U.S. at 229.

The *Smith* case focused on the procedural steps the trial court must take when potential juror misconduct arises. The Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith*, 455 U.S. at 217. "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.* The trial judge can "'determine the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial, in a hearing with all interested parties permitted to participate.'" *Id.* (quoting *Remmer*, 347 U.S. at 230 (1954)). The trial judge may ascertain the impartiality of the

juror "by relying solely upon the testimony of the juror in question." *Id*. at 215; *see also id*. at 217 n.7 (rejecting the argument that the evidence from the juror in question "is inherently suspect").

However, even if a state court is found to have committed a constitutional error in the context of cases involving juror misconduct, federal habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993). "Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2015) (internal quotation marks omitted). As such, there must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 U.S. at 637 (internal quotation marks omitted).

Petitioner raised Ground One in his habeas corpus petitions before the California Court of Appeal (ECF No. ECF No. 14-1 at 3-4) and the California Supreme Court (ECF No. 14-3 at 1). The California Supreme Court denied the petition without comment, and thus, there is no reasoned decision from the state's highest court. (ECF No. 14-3 at 1.) Therefore, this Court "looks through" to the underlying California Court of Appeal decision and presumes that it provides the basis for the higher court's denial of Petitioner's claims. *See Ylst*, 501 U.S. at 804.

### 1. The California Court of Appeal Followed Clearly Established Federal Law

Because the trial court followed clearly established law regarding actual juror bias,[2] the California Court of Appeal did not unreasonably apply Supreme Court precedent in violation of Petitioner's constitutional rights. *Mattox*, *Remmer*, and *Smith* set forth the relevant clearly establish federal law regarding actual juror bias. Both *Mattox* and *Remmer*

---

[2] "There is no clearly established federal law regarding the issue of implied bias." *Hedlund v. Ryan*, 815 F.3d 1233, 1248 (9th Cir. 2016) Thus, to the extent Petitioner is pursuing a claim on grounds of implied juror bias, such a claim fails because the Supreme Court has never explicitly adopted or rejected the doctrine of implied bias. *Id.*

emphasize that the presumption of prejudice arising from the jurors' exposure to extrinsic evidence may be rebutted with evidence showing the extrinsic information was harmless. *See Mattox*, 146 U.S. at 150; *Remmer*, 347 U.S. at 229; *see also Tong Xiong v. Felker*, 681 F.3d 1067, 1077 (9th Cir. 2012) ("Mattox and Remmer teach that . . . the Government may overcome the presumption of prejudice with proof that the jury's consideration of extrinsic evidence was harmless."). And *Smith* holds that a court may adequately determine the prejudicial effect of a jury's exposure to extrinsic evidence through "a hearing in which the defendant has the opportunity to prove actual bias." *Smith*, 455 U.S. at 216–17.

Here, consistent with this Supreme Court authority, the California Court of Appeal recognized that there was a presumption of prejudice, but found that presumption was ultimately rebutted by other evidence, including evidence collected by the trial court at an in camera hearing attended by counsel for all defendants. (ECF No. 14-1 at 19-23.) The in camera hearing held by the trial court complied with clearly established federal law as all parties were represented when the trial court questioned each individual juror to determine whether he or she could be fair and impartial after witnessing Macias's attack on his attorney. The court generally asked each juror four questions: (1) whether the juror could put aside what the juror saw, and fairly and impartially evaluate the evidence; (2) whether the juror could not let what the juror saw affect how he or she looked at Petitioner and co-defendant Polina, given that neither of these defendants was involved in the incident; (3) whether the juror could fairly and impartially set aside what they saw with regard to co-defendant Macias and decide the charges based on what Macias allegedly did on the date of the charged incident; and (4) whether the juror was interviewed by the sheriff. (ECF No. 14-8.) The trial court found that, with the exception of two jurors whom he excused, the jury could be fair and impartial. (ECF No. 14-9 at 72.) Thus, the Court of Appeal's rejection of Petitioner's claim that he was denied his federal constitutional right to a fair trial by impartial jurors complied with clearly established law regarding actual juror bias. *See Hedlund*, 815 F.3d at 1247–48 (holding a hearing to determine actual bias complies with clearly established federal law on claims of actual juror bias and, "'so long

as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness.'") (quoting *Dyer v. Calderon*, 151 F.3d 975 (9th Cir. 1998)).

Petitioner offers no evidence or argument to show that the Court of Appeal's holding regarding Petitioner's claim of juror bias was contrary to or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d).

### 2. Substantial and Injurious Effect

Even if it were constitutional error not to declare a mistrial due to the jury's exposure to extrinsic evidence, this Court concludes that any such error would be harmless under *Brecht*. The California Court of Appeal conducted a harmlessness analysis applying state law:

> Whether an individual verdict must be overturned as a result of such juror exposure or irregularity """"is resolved by reference to the substantial likelihood test, an objective standard."""" (*Hamilton*, *supra*, 20 Cal.4th at p. 296) In *Hamilton*, the California Supreme Court held that "[a]ny presumption of prejudice is rebutted, and the verdict will not be disturbed, if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant." (*Ibid.*)

(ECF No. 14-1 at 19-20.) The test the California Court of Appeal applied, the substantial likelihood test, is consistent with the *Brecht* standard; both require an analysis of whether there is a reasonable probability that the error was harmful.

Applying *Brecht* to the record before the Court, Petitioner has not shown that juror misconduct, if any, had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. 619, 637–38 (1993). The trial court admonished the jury immediately upon their return from a recess necessitated by the courtroom attack at issue. (ECF No. 14-1 at 13-14 (asking the jury to "*not let what happened in the courtroom affect what you think the evidence does or does not show about what happened*").) The trial court conducted an in camera interview of the jurors and alternates as to their impartiality and,

prior to deliberations, instructed those jurors to disregard the courtroom attack and decide the case based only on the evidence presented in court. The trial court excused two jurors who stated that they could not be fair and impartial and affirmatively found that the remaining jurors had provided honest statements demonstrating that they could be fair and impartial. (ECF No. 14-1 at 21-23; *see also* ECF No. 14-9 at 68-69.)

Petitioner's conduct during the attack also undermines the likelihood of juror bias. As the trial court noted, Petitioner sat still during the attack and appeared to be unaware of what Macias was going to do, thus making it unlikely that the jurors would hold Macias's actions against Petitioner. (ECF No. 14-9 at 68.)

Further, the jury's verdicts as to Petitioner weigh against a finding of juror bias. The jury acquitted Petitioner of the most serious charges against him. Specifically, the jury convicted Petitioner on the charge of assault with a deadly weapon by a prisoner, but acquitted Petitioner of the conspiracy to commit murder and the attempted murder charges. (ECF No. 13-1 at 8.) The jury also found the government had not proved the street-gang allegation as to any of the charges. (*Id.*; ECF No. 14-3 at 241-43.) This is strong evidence that the jury carefully and dispassionately evaluated the evidence against Petitioner, without being biased by the attack in the courtroom.

Finally, the evidence that Petitioner was guilty of assault with a deadly weapon by a prisoner was strong – the victim of the assault testified that Petitioner punched him and held him down while co-defendant Macias slashed his head with a razor blade. (ECF No. 14-1 at 8.)

In sum, with the strong evidence against Petitioner and the trial court's efforts to ensure that the jurors who would ultimately decide the case were impartial, Petitioner fails to show that Macias's attack on his attorney with a razor blade while in the presence of the jury had a substantial and injurious effect upon the verdict. Petitioner's Ground One request for habeas relief should be denied.

/ / /

/ / /

### 3. The Court of Appeal's Decision was not Based on an Unreasonable Determination of the Facts about Juror Number Two

The trial court found that the jurors' responses to the Court's questions were credible and that each of the jurors who remained on the panel, including Juror Number Two, could be fair and impartial. (ECF No. 14-1 at 18; ECF No. 14-9 at 72.) The Court of Appeal found that Juror Number Two did not exhibit actual bias against Petitioner. (ECF No. 14-1 at 24.) Petitioner seems to challenge these findings as unreasonable in light of the in camera questioning of Juror Number Two.

A trial court's determination of juror bias is given "special deference," both on direct appeal and in habeas proceedings, because juror bias is largely a function of the credibility of the juror. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Maxwell v. Roe*, 628 F.3d 486, 503 (9th Cir. 2010). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

Petitioner's claim is without merit because the state court's decision was not objectively unreasonable in light of the evidence presented. During the in camera proceedings, the Juror Number Two was thoroughly questioned about his ability to remain fair and impartial. The Court of Appeal provided the following accurate synopsis of Juror Number Two's responses to the trial court's questions:

> Juror No. 2, when asked the first question [(whether the juror could put aside what the juror saw, and fairly and impartially evaluate the evidence)], stated: "My feeling is yes, but I think if once we adjourn to go through the case, we'll be doing a lot of talking." The court indicated that the conversation should not be about what happened in court between [co-defendant] Macias and [Macias's counsel] Burgener, and juror No. 2 replied, "I understand." When the court asked juror No. 2 whether he could abide by an instruction not to consider what had happened in court, he indicated he could do so. Juror No. 2 then indicated he would "certainly try" to not let the incident affect his deliberations with regard to [Petitioner] Quinteros and [co-defendant] Polina, but indicated that "there's got to be an effect" and noted that he observed "a young man that had a very bad temper." The court asked

juror No. 2 whether—as to [co-defendant] Macias—he could set aside what happened in court and decide the case on what was said on the witness stand. Juror No. 2 replied, "Yes, we could go through our notes and tally it up and figure what's correct."

(ECF No. 14-1 at 16-17.) Based on Juror Number Two's responses, it was objectively reasonable for the trial court to find that Juror Number Two could be a fair and impartial juror. (ECF No. 14-1 at 18; ECF No. 14-9 at 72.) Similarly, it was objectively reasonable for the Court of Appeal to find that Juror Number Two's responses to the Court's questions did not show bias against Petitioner. (ECF No. 14-1 at 24.) Petitioner has not met his burden to show otherwise.

Furthermore, whether a juror is actually biased is a question of fact, *see Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc), and therefore the state court's determination that Juror Number Two was not biased is presumed to be correct under 28 U.S.C. § 2254(d)(2). Petitioner has not come forward with evidence to rebut this presumption of correctness. *See* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

For the reasons stated above, the state court adjudication of Ground One was not contrary to, or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding under 28 U.S.C. § 2254(d). Thus, the Court **RECOMMENDS** habeas relief be **DENIED** as to Ground One.

## B. Ground Two

As to Ground Two, Petitioner presents two arguments for relief concerning the use of physical restraints: (1) the trial court "prejudicially abused its discretion and violated his federal constitutional right to due process by ordering that [Petitioner] be restrained during trial"; and (2) the trial court prejudicially abused its discretion, thereby violating Petitioner's right to due process, when the court allowed "[Petitioner] to be visibly restrained and handcuffed in front of the jury during a hearing following [Mr.] Macias's

attack on his attorney." (Pet. at 1, 11-12.)  In its memorandum in support of its answer, Respondent contends that Petitioner's first argument is procedurally barred and that any error was harmless. (ECF No. 13-1 at 21-25.)  In response to Petitioner's second argument, Respondent contends the Court of Appeal correctly applied the relevant Supreme Court authority and any error was harmless.  (*Id*. at 24-25.)

Petitioner raised Ground Two in his habeas corpus petitions before the California Court of Appeal (ECF No. ECF No. 14-1 at 4) and the California Supreme Court (ECF No. 14-3 at 1).  The California Supreme Court denied the petition without comment, and thus, there is no reasoned decision from the state's highest court.  (ECF No. 14-3 at 1.) Therefore, this Court "looks through" to the underlying California Court of Appeal decision and presumes that it provides the basis for the higher court's denial of Petitioner's claims. *See Ylst*, 501 U.S. at 804.

### 1.     Petitioner's Leg Restraints Claim is Procedurally Defaulted

Petitioner claims the trial court violated his right to due process by forcing him to be restrained in leg chains in front of the jury.  (Pet. at 11.)  The record reflects that all three co-defendants, including Petitioner, sat through trial wearing leg chains that were strung to an I-bolt on the floor.  The leg restraints were not apparent to the jury because the chains were concealed by a table skirt.  (ECF No. 14-1 at 27.)  After co-defendant Macias's courtroom attack on his attorney, and in the presence of the jury, security personnel unchained all three co-defendants from the ground to remove them from the courtroom. (ECF No. 14-10 at 6-7.)  The trial court put these facts on the record outside the presence of the jury, and stated that Petitioner "is a sentenced prisoner serving 13 years. . . .  There was no objection from any of the attorneys or the defendants to being chained down, bolted down that way, so that's the way we proceeded, because we needed that extra security." (*Id.*; ECF No. 14-9 at 51-53.)

Petitioner challenged the trial court's use of physical restraints for the first time on appeal.  (ECF No. 14-1 at 32.)  Because Petitioner did not challenge the use of physical restraints at trial and raised his challenge for the first time on appeal, the California Court

of Appeal held that Petitioner forfeited this claim that the trial court abused its discretion in ordering that he be restrained during trial. (ECF No. 14-1 at 32-33.) The Court of Appeal explained that "it is settled that the use of physical restraints in the trial court cannot be challenged for the first time on appeal and a defendant's failure to object and make a record below waives the claim." (ECF No. 14-1 at 32 (citing California law).) Petitioner, thus, was procedurally barred from arguing the trial court abused its discretion in ordering that Petitioner be restrained with leg chains strung to the I-bolt on the floor. (*Id.*)

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court has declined to address those claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (quotations and internal alterations omitted); *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003). More specifically, where (as here) compliance with a state's contemporaneous objection requirement is necessary to preserve an issue for review on appeal, a failure to object in the trial court also will serve to preclude federal habeas corpus review. *See Wainwright v. Sykes*, 433 U.S. 72, 81–86 (1977). California's contemporaneous objection requirement, as applied in instances of a complete failure to object (as opposed to a situation where an objection is made but the court does not rule on the issue), is an independent and adequate procedural bar. *Bonin v. Calderon*, 59 F.3d 815, 842–43 (9th Cir. 1995); *Melendez v. Pliler*, 288 F.3d 1120, 1125 (9th Cir. 2002).

Petitioner's claim regarding the use of leg restraints at trial may not be entertained here because the Court of Appeal determined that Petitioner forfeited this claim by failing to object and make a record at trial. This determination was an application of California's contemporaneous objection requirement – a state procedural requirement that the Ninth Circuit recognizes as an independent and adequate state procedural ground to bar federal habeas review. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005) ("Federal habeas claims must be dismissed where state courts have decided the claim on state

procedural grounds"). In light of this state procedural bar, and because Petitioner has advanced no explanation for his failure to object at trial, Petitioner's claim is procedurally defaulted.[3] *See Wainwright*, 433 U.S. at 90–91. Thus, Petitioner's claim concerning the use of leg restraints should be denied.

### 2. Any Error Concerning the Use of Physical Restraints was Harmless

Beyond challenging the decision to restrain Petitioner with leg chains generally, Petitioner argues that the trial court also violated his right to due process because of the two instances during trial when he was visibly restrained in front of the jury. The first instance of claimed visible restraints was when Petitioner's leg restraints were removed to clear the defendants from the courtroom immediately following Macias's courtroom attack on his attorney. The second instance involved handcuffs that were visible to the jury at a brief hearing held the day after the courtroom attack. Assuming for purposes of analysis only that Petitioner's argument regarding his leg restraints is not procedurally defaulted, Petitioner's arguments concerning the trial court's use of visible restraints fail.

"The Constitution forbids the use of shackles (or other physical restraints) visible to the jury absent a trial court determination, in the exercise of its discretion, that the use is justified by an essential state interest—such as the interest in courtroom security – specific to the defendant on trial." *Blacher v. McEwen*, 12cv4775, 2015 WL 5590771, at *8 (N.D. Cal. Sept. 22, 2015) (citing *Deck v. Missouri*, 544 U.S. 622, 624 (2005)). However, a jury's brief or inadvertent glimpse of a defendant in physical restraints does not presumptively warrant habeas relief. *See Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004). Rather, habeas relief arising from the unjustified use of physical restraints is only warranted

---

[3] A petitioner can overcome procedural default by demonstrating acceptable cause for the default and actual prejudice as a result of the alleged violation of federal law. *See* Wainwright, 433 U.S. at 90–91; *Coleman*, 501 U.S. at 750. Petitioner here failed to make any showing to overcome the default. He was represented by counsel at trial, and the record does not reasonably demonstrate that Petitioner suffered an actual and substantial disadvantage as a result of being restrained at trial. There is no evidence that any juror actually saw Petitioner's leg restraints, and to the extent any juror observed security personnel remove the leg restraints following the courtroom attack, that observation would have been brief.

if the use of restraints was so prejudicial that it "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008) (quoting *Brecht*, 507 U.S. at 623); *Williams*, 384 F.3d at 591.

Here, in addition to holding Petitioner's leg restraints claim was procedurally barred, the Court of Appeal, in the alternative, denied the claim on the merits. (ECF No. 14-1 at 33.) The Court of Appeal also denied Petitioner's claim concerning the use of visible handcuffs. (*Id.* at 33-34.) In doing so, the Court of Appeal reasonably applied the correct clearly established United States Supreme Court precedent on the issue of physical restraints, including *Deck v. Missouri*, and found that no prejudicial error occurred. (*See generally id.* at 29-34.)[4] The Court of Appeal also reasonably concluded that there was a "manifest need" to briefly use visible physical restraints during the two instances at trial challenged by Petitioner. (*Id.* at 33-34.) The brief use of visible restraints following Macias's attack on his attorney was necessary to secure the courtroom, and the brief use of visible restraints when the jury returned the day after the attack was "a reasonable measure that demonstrated to the jury that the courtroom security had been restored." (*Id.*) However, the issue before this Court on habeas review is whether the use of restraints amounts to prejudicial error under *Brecht*.

In the Ninth Circuit, "when a defendant's shackling was not actually seen by the jury during the trial, we have held that the shackling was harmless error." *Rhoden v. Rowland*, 172 F.3d 633, 636 (9th Cir. 1999). To determine whether the imposition of ***visible*** physical restraints amounts to prejudicial error under *Brecht*, reviewing courts have considered the appearance and visibility of the restraining device, the nature of the crime with which the

---

[4] The fact that the state court also chose to address the merits of Petitioner's claim does not affect this Court's conclusion that the Court of Appeal's application of the contemporaneous objection requirement is an independent and adequate procedural bar to federal habeas corpus relief under 28 U.S.C. § 2254. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where . . . the state court simultaneously rejects the merits of the claim.").

defendant was charged, and the strength of the state's evidence against the defendant. *Larson*, 515 F.3d at 1064.

### a. Appearance and Visibility of the Restraining Device

Addressing the first instance of claimed visible restraints – when Petitioner's leg restraints were removed to clear the defendants from the courtroom immediately following Macias's courtroom attack on his attorney – the Court of Appeal pointed out that the record below only shows that "some of the jurors 'may have seen' the defendants getting unchained from the floor after Macias's attack on his attorney, but that this would have been the first time the jurors became aware the defendants were restrained." (ECF No. 14-1 at 33.) Addressing the second instance of claimed visible restraints – the brief hearing in which Plaintiff wore handcuffs – the Court of Appeal highlighted key facts:

> The record shows this was the first time following the incident [Macias's attack on his attorney] that the jurors were again in the courtroom in the presence of the defendants, and it shows the hands of all three defendants were shackled. This brief use of visible physical restraints was a reasonable measure that demonstrated to the jury that courtroom security had been restored. The record also shows this hearing lasted only a few minutes while the court admonished and excused the jury with directions to return on December 19. This was also the last time [Petitioner] Quinteros's hands were shackled in the presence of the jury. When the jurors returned to listen to the parties' closing arguments, [Petitioner] Quinteros's and Polina's hands were not shackled—only Macias's hands remained shackled.

(ECF No. 14-1 at 33-34.)

This Court concludes that the Court of Appeal reasonably determined that the leg restraints, if visible at all, were only briefly visible to the jury. (*See* ECF No. 14-1 at 33.) To the extent that any jurors observed Petitioner in leg restraints following the courtroom attack, that observation was brief. (ECF No. 14-3 at 227-28; ECF No. 14-10 at 6-7.) For all but a few moments, Petitioner's leg restraints were not apparent to the jury because the chains were concealed by a table skirt. (ECF No. 14-1 at 27.) Petitioner's leg restraints were removed immediately following Macias's attack on his attorney, during which time

the jury's attention was more likely focused on Macias, his injured attorney, or the nearest exit.

This Court also concludes that the Court of Appeal reasonably determined that the jury's observation of Petitioner in handcuffs was brief. (*See* ECF No. 14-1 at 33-34; ECF No. 14-10 at 6-7.) According to the minutes from December 14, 2012 (the day after the courtroom attack), only one hearing was held where the defendants as well as all jurors were present together in the same courtroom. (ECF No. 14-3 at 227-28.) The hearing lasted two minutes. (*Id*. at 228; ECF No. 14-9 at 61-62.) During this hearing, the Court issued a media admonishment and directed the jury to return on December 19th for instructions, closing arguments, and deliberations. (*Id*.) Moreover, as the Court of Appeal found, the record reflects that this was the first time after the courtroom attack that the defendants and all jurors were present together in the same courtroom. (*See* ECF No. 14-3 at 225-28.) The jury's observation of Petitioner in handcuffs was brief.

Petitioner offers no facts or argument demonstrating that the possible brief observation by some jurors that he wore leg restraints and/or the brief observation of his handcuffs during the first hearing after the courtroom attack had a substantial or injurious effect on the verdict.

### b. Nature of the Crime and Strength of the State's Evidence

Two other factors impact the Court's risk assessment as to whether Petitioner was prejudiced by the jury having seen him in restraints – the nature of the crime and the strength of the state's evidence.

Petitioner was charged with violent crimes of conspiracy to commit murder, attempted murder, and assault with a deadly weapon by a prisoner. Thus, Petitioner's visible restraints increases the risk that "the shackles essentially branded [him] as having a violent nature." *Rhoden*, 172 F.3d at 637. 9th Cir. 1999), 172 F.3d at 637. Yet, weighing against a finding of prejudice is the fact that the jury only convicted Petitioner of the least serious charge against him – assault with a deadly weapon by a prisoner, and that the evidence against Petitioner on this charge was strong. (*See* ECF No. 13-1 at 8.) The victim

of the assault testified that Petitioner punched him and held him down while co-defendant Macias slashed his head with a razor blade. (ECF No. 14-1 at 8.)

On balance, the Court concludes that habeas relief is not warranted because, even if the trial court's imposition of physical restraints violated Petitioner's right to due process, that error was harmless. For the reasons stated above, the state court adjudication of Petitioner's Ground Two was not an unreasonable application of clearly established federal law nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding under 28 U.S.C. § 2254(d). Accordingly, the Court **RECOMMENDS** habeas relief be **DENIED** as to Ground Two.

### C.   Ground Three

As to Ground Three, Petitioner requests an evidentiary hearing. (Pet. at 13.) Evidentiary hearings in § 2254 habeas cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999). The provisions of 28 U.S.C. § 2254(e)(2), included below, control this decision:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that —
>
> (A)   the claim relies on —
>
> > (i)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In order to determine whether to grant an evidentiary hearing, the Court must first "determine whether a factual basis exists in the record to support the petitioner's claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 669 (9th Cir. 2005) (citing *Baja*, 187 F.3d at 1078). If such factual basis does not exist, then the Court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" *Id.* at 669–70.

A district court's ability to conduct an evidentiary hearing is further limited by the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170 (2011). *See Stokley v. Ryan*, 659 F.3d 802, 809 (9th Cir. 2011) (noting the decision in *Pinholster* "dramatically changed the aperture for consideration of new evidence" in federal habeas courts). Pursuant to *Pinholster*, a federal court may not consider new evidence developed at a federal court evidentiary hearing on claims adjudicated on the merits in state court unless both the standard set forth in § 2254(d) and the standard set forth in § 2254(e)(2) are satisfied. *Pinholster*, 563 U.S. at 184–85. Therefore, a court must first review the state courts' rejection of a petitioner's claims decided on the merits to determine whether a petitioner has "satisfied § 2254(d)(1)'s threshold obstacle to federal habeas relief." *Id.* at 206 (Sotomayor, J., dissenting). This review is limited to the state court record. *Id.*

Here, all of Petitioner's claims were adjudicated on the merits by the state courts. Thus, Petitioner can only proceed to develop additional evidence if either 28 U.S.C. § 2254(d)(1) or (d)(2) is first satisfied. *See Sully v. Ayers*, 725 F.3d 1057, 1076 (9th Cir. 2013) (citing *Pinholster*, 563 U.S. at 203, n.20) ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."). For all the reasons discussed above in this Report and Recommendation, Petitioner has failed to satisfy § 2254(d). Accordingly, Petitioner's request for an evidentiary hearing is **DENIED**.

## V.   CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

///

**IT IS ORDERED THAT** any party to this action may file written objections with the District Court and serve a copy on all parties no later than **May 29, 2017**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED THAT** any reply to the objections shall be filed with the District Court and served on all parties no later than **June 12, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

　　**IT IS SO ORDERED.**

Dated: May 8, 2017

Hon. Jill L. Burkhardt
United States Magistrate Judge

16-cv-583-JLS (JLB)